IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAL-MART REAL ESTATE BUSINESS TRUST, SAM'S REAL ESTATE BUSINESS TRUST,<br><br>   Plaintiffs,<br><br>   v.<br><br>PITT REALTY, LLC, PITT GALLERIA REALTY, LLC, PITT GALLERIA CH, LLC, AND PITT GALLERIA NASSIM, LLC,<br><br>   Defendants. | Case No. 25-cv-761<br><br>**ELECTRONICALLY FILED** |

**COMPLAINT FOR DECLARATORY RELIEF,
INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs, Wal-Mart Real Estate Business Trust and Sam's Real Estate Business Trust (collectively, "Plaintiffs"), by its attorneys, Fox Rothschild LLP, files the following Complaint for Declaratory Relief, Injunctive Relief, and Damages ("Complaint"), stating as follows:

**NATURE OF THE ACTION**

1. Defendants, Pitt Realty, LLC, Pittsburgh Mills Residual Limited Partnership, Pittsburgh Mills Limited Partnership, Pitt Galleria Realty, LLC, Pitt Galleria CH, LLC, and Pitt Galleria Nassim, LLC (collectively, "Defendants") are responsible for maintenance of the roadways surrounding the parcels upon which Plaintiffs operate their businesses at the shopping area commonly known as Pittsburgh Mills Shopping Center and Galleria at Pittsburgh Mills ("Pittsburgh Mills").

2. In this action, Plaintiffs seek, *inter alia*, damages, declaratory, and injunctive relief due to Defendants' failure to maintain the roadways at Pittsburgh Mills pursuant to their contractual obligations.

**PARTIES**

3. Plaintiff Wal-Mart Real Estate Business Trust ("Walmart") is a Delaware statutory trust wholly owned by Wal-Mart Property Co., a Delaware corporation with its principal place of business located in Benton County, Arkansas.

4. Plaintiff Sam's Real Estate Business Trust ("Sam's") is a Delaware statutory trust wholly owned by Sam's Property Co., a Delaware corporation with its principal place of business located in Benton County, Arkansas.

5. The ultimate parent company of both Wal-Mart Property Co. and Sam's Property Co. is Walmart, Inc., a Delaware corporation which has its principal place of business located in Benton County, Arkansas.

6. Defendant Pitt Galleria Realty LLC ("Pitt Galleria Realty") is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office located at 125 Locust Street Harrisburg, PA 17101. Valley Stream Realty Corp., a New York corporation, is the sole member of Pitt Galleria Realty.

7. Defendant Pitt Realty LLC ("Pitt Realty") is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with its registered office located at 125 Locust Street Harrisburg, PA 17101. Igal Namdar, managing member of Pitt Realty, is an adult individual with an address of 341 South River Drive NW, Miami, Fl, 33128.

8. Pitt Galleria CH LLC ("Pitt Galleria CH") is a limited liability company organized and under the laws of the Commonwealth of Pennsylvania with its registered office located at 125

Locust Street Harrisburg, PA 17101. Matin Hakimi, managing member of Pitt Galleria CH, is an adult individual with an address of 45 Pond Road, Great Neck, NY, 11024.

9. Pitt Galleria Nassim LLC ("Pitt Galleria Nassim") is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with its registered office located at 125 Locust Street Harrisburg, PA 17101. Elliot Nassim, managing member of Pitt Galleria Nassim, is an adult individual with an address of 11 Flower Lane, Great Neck, NY, 11024.

10. Pitt Galleria Realty LLC, Pitt Realty LLC, Pitt Galleria CH LLC and Pitt Galleria Nassim LLC are collectively hereinafter referred to as "Defendant Owners."

11. On or about May 11, 2018, Defendant Owners became the record owners of certain properties within the Pittsburgh Mills complex located in Township of Frazer, Allegheny County, Pennsylvania, including Block and Lot Nos.: 840-K-50, 840-K-100, 840-L-275, 840-L-250 and 840-P-10. A true and correct copy of the vesting deed conveying Defendant Owners' real estate to them is attached hereto as **Exhibit 1.**

12. The Pittsburgh Mills complex is subject to a Declaration of Easements, Covenants, Conditions, and Restrictions (the "Declaration") which governs the rights and obligations of all parties with an interest in the real estate within the Site Plan attached to Declaration. A true and correct copy of the Declaration is attached hereto as **Exhibit 2**, and the Site Plan is Exhibit B to the Declaration (hereinafter, all real estate within the bounds of the Site Plan attached to the Declaration, whether owned by a Parcel Owner or Mall Owner, as those terms are defined in the Declaration, shall be referred to as the "Property").

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(2), as there is complete diversity of citizenship between Walmart and Sam's, on the one

hand, and Pitt Galleria Realty, Pitt Realty, Pitt Galleria CH, and Pitt Galleria Nassim, on the other, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. After reasonable investigation, and based upon reasonable information and belief, Plaintiffs aver that the citizenship of each of the members of the Defendant LLCs is diverse from those of the Plaintiffs.

15. Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Complaint occurred in the Western District of Pennsylvania.

## FACTUAL BACKGROUND

### A. Contractual Rights and Obligations of the Parties.

16. On September 24, 2004, Pittsburgh Mills Limited Partnership and Pittsburgh Mills Residual Limited Partnership entered into the Declaration. *See* **Exhibit 2**.

17. The Declaration defines "Mall Owner" as "the Person which from time to time owns fee title to the enclosed mall Building located on the Mall Site." *See* **Exhibit 2** at 4.

18. Section 9.9 of the Declaration provides that "This Declaration shall be binding upon and shall inure to the benefit of Declarant and the respective successors and assigns of the Declarant."

19. Defendant Owners are the current "Mall Owners," and successors to the "Declarant" as those terms are used in the Declaration. *See* **Exhibit 2** at 4.

20. Under the Declaration, a "Parcel Owner" is defined, in pertinent part, as "any Person that owns fee title to any Parcel within the Property and shall also mean any ground lessee of any entire Parcel within the Property." *See* **Exhibit 2 at 5.**

4

21. Under the Declaration, an "Occupant" is defined in pertinent part as "each Parcel Owner and any Person (including Declarant) who acquires any rights by lease, deed, or other document to own and/or occupy and Parcel (or portion thereof) of the Property and/or any space in any Building located upon any Parcel." *See* **Exhibit 2 at 4.**

22. Under the Declaration, each Parcel Owner is also an Occupant. *See* **Exhibit 2 at 4-5.**

23. By deed dated January 12, 2005, and recorded with the Allegheny County Recorder of Deeds as instrument no. 2005-1567, Pittsburgh Mills Residual Limited Partnership conveyed to Walmart the real property, and all improvements thereon, at Parcel P-2 of the Pittsburgh Mills Plan of Lot No. 3, as recorded in the Recorder's Office of Allegheny County in Plan Book Vol. 247, Pgs. 160-165 and described fully in the deed attached hereto as **Exhibit 3** (the "Walmart Deed").

24. By deed dated January 12, 2005, and recorded with the Allegheny County Recorder of Deeds as instrument no. 2005-1564, Pittsburgh Mills Residual Limited Partnership conveyed to Sam's the real property, and all improvements thereon, at Parcel P-1 of the Pittsburgh Mills Plan of Lot No. 3, as recorded in the Recorder's Office of Allegheny County in Plan Book Vol. 247, Pgs. 160-65 and described fully in the deed attached hereto as Exhibit 4 (the "Sam's Deed").

25. Therefore, Plaintiffs are current "Parcel Owners" and "Occupants," as those terms are used in the Declaration. *See* **Exhibit 2** at 5.

26. As Occupants, Walmart and Sam's have an interest to be protected by the Declaration, and each have the right to prosecute any proceedings at law or in equity against any Person (including Defendants) breaching or attempting to breach the Declaration and/or to recover damages for any such breach. Such remedies include temporary restraining orders, preliminary

and permanent injunctions enjoining any such violation or attempted violation, and actions for specific performance of the Declaration.

27. Pursuant to Section 2.1(c) of the Declaration, Parcel Owners hold a non-exclusive easement over the Vehicular Easement Areas, including the Roadways (as defined below), without interference with the free flow of vehicular traffic over the Vehicular Easement Areas.

28. The Site Plan attached to the Declaration demonstrates that the real estate purchased by Defendant Owners specifically includes streets within the Property's boundaries (the "Roadways"). *See* Exhibit B to **Exhibit 2**.

29. Section 4.2 of the Declaration provides:

> Mall Owner shall maintain the Common Amenities in a good and safe state of repair and in a clean and orderly condition, and in compliance with Laws; provided, however, Mall Owner shall not be required to maintain any Common Amenity to the extent the maintenance obligation has been assumed by a Utility Provider or a governmental authority. Mall Owner's obligations hereunder may include maintaining, cleaning, insuring, repairing, paving and resurfacing, operating, removing trash, obstructions, debris and refuse from, and lighting, as applicable, the Common Amenities.

30. In Article 1 of the Declaration, "Common Amenities" is defined, in pertinent part, to include: "[A]ll streets shown on the Site Plan which have been dedicated to the public[.]"

31. Pursuant to a March 4, 2003, Project Cooperation Agreement, while the Roadways have been dedicated to the public, the Mall Owner is responsible for the maintenance of the Roadways – including repaving and rebuilding the roads' base or subbase.

32. Section 9.4(a) of the Declaration provides:

> Except as provided otherwise in this Declaration, Declarant, the DRC and any other Occupants having an interest to be protected hereunder, shall each have the right to prosecute any proceedings at law or in equity against any Person breaching or attempting to breach the provisions of this Declaration, and/or to recover damages for any such breach. The remedies available under this Subsection 9.4(a) shall include ex parte applications for temporary restraining orders, preliminary

injunctions and permanent injunctions enjoining any such violation or attempted violation, and actions for specific performance of this Declaration.

33. Pursuant to Section 9.14 of the Declaration, the Prevailing Person in any action to enforce the Declaration shall be entitled to its costs and expenses of suit, including reasonable attorneys' fees and disbursements.

B. **Defendants Fail to Maintain the Roadways.**

34. Over the last several years, the Roadways within the Property have not been maintained in a good and safe state of repair.

35. At present, the Roadways, including but not limited to those that customers, employees, and others traverse to gain access to Plaintiffs' properties, are in terrible disrepair, pockmarked in particular, with massive tire and wheel destroying potholes. *See, e.g.,* collection of photos of the Roadways and Facebook posts about damage to customers' cars caused by the potholes, attached hereto as **Exhibit 5.**

36. The terrible condition of the Roadways and the potholes in them has been extensively reported by the local news media. *See, e.g.,* Shaylah Brown, *Pittsburgh Mills Potholes – Much Frustration, Few Answers*, VALLEY NEWS DISPATCH, March 6, 2025, https://triblive.com/local/valley-news-dispatch/pittsburgh-mills-potholes-much-frustration-few-answers/#:~:text=Kidding%20aside%2C%20residents%20and%20workers,at%20sbrown@triblive.com (last visited 4/14/25), a true and correct copy of which is attached hereto as **Exhibit 6**.

37. The current state of the Roadways presents dangerous and trying driving conditions for Plaintiffs and their vendors, suppliers, and customers. *See, e.g.,* **Exhibits 5 & 6.**

38. On September 4, 2024, pursuant to Section 9.4 of the Declaration, Sam's sent a Notice of Default to Namdar Realty, believed to be an affiliate of the Defendants, noting the Defendants' failure to maintain the Roadway known as "Village Center Drive" as required by

Section 4.2 of the Declaration (the "September 4th Default Notice"). A true and correct copy of the September 4th Default Notice is attached hereto as **Exhibit 7**.

39. In the September 4th Default Notice, Sam's requested Defendant Namdar to make repairs within 30 days. *Id*.

40. On March 13, 2025, pursuant to Section 9.4 of the Declaration, Walmart sent a Notice of Default to Defendant Pitt Realty, noting Pitt Realty's failure to maintain the Roadway known as "Village Center Drive" as required by Section 4.2 of the Declaration (the "March 13th Default Notice"). A true and correct copy of the March 13th Default Notice is attached hereto as **Exhibit 8**.

41. In the March 13th Default Notice, Walmart requested Defendant Pitt Realty to make repairs within 30 days. *Id.*

42. On March 19, 2025, Defendant Pitt Realty responded to the March 13th Default Notice from Walmart, informing Walmart that Pitt Realty "had already engaged a vendor to make the repair" and requesting that Walmart remove gravel deposited on the roadway.

43. On March 26, 2025, Walmart and Sams sent a letter to Pitt Realty again demanding that Defendants "immediately commence repairs of the roadways" and complete such repairs by April 12, 2025 (the "March 26, 2025 Letter"). A true and correct copy of the March 26, 2025 Letter is attached hereto as **Exhibit 9**.

44. In the March 26, 2025 Letter, Walmart informed Defendant Pitt Realty that Walmart has incurred costs and expenses in excess of $96,000 as a result of Mall Owner's failure to maintain the roadway. *Id*.

45. Since the March 26, 2025 Letter, due to Defendants' continued failure to maintain the roadway, Walmart has been forced to incur additional costs to mill and pave the roadway which is estimated to cost at least $133,748.00.

46. As of the date of filing this Complaint, the Roadways continue to be in terrible disrepair, still pockmarked in particular with massive tire and wheel destroying potholes. Upon information and belief, it is averred that, due to Defendants' failure to maintain the Roadways, they are now in need of over $5,000,000.00 of repairs.

C. **Defendants Improperly Assess Fees for Common Area Maintenance.**

47. Pursuant to Section 4.4 of the Declaration, each Parcel Owner is required to contribute expenses for common area maintenance ("CAM") through maintenance assessments ("Maintenance Assessments"). *See* **Exhibit 2 § 4.4.**

48. Pursuant to § 4.4 (a), Maintenance Assessments are calculated based on each Parcel Owner's proportionate share of the total CAM expenses incurred by the Mall Owner. The proportionate share of a Parcel Owner is determined by the floor area of the improvements on each Parcel Owner's parcel relative to the total floor area of all improvements within the Property and the mall site. *Id*.

49. According to § 4.4(c), the Declarant must advise each Parcel Owner of the total amount of the CAM incurred in a given year, along with the share attributable to each Parcel Owner. *Id*. at § 4.4(c).

50. However, pursuant to § 4.4(a) of the Declaration, the maintenance obligations outlined in § 4.4 of the Declaration are expressly limited: "to the extent otherwise provided in any recorded deed restriction to which Declarant and the applicable Parcel Owner are parties, which deed restriction shall supersede any provision hereof to the contrary." *Id*. at § 4.4(a).

9

51. The Walmart Deed limits Maintenance Assessments to $30,050.00 per annum, subject to adjustment on January 1 of each year based upon a change in the Consumer Price Index from the date of recording of the Walmart Deed (the "Walmart CAM Cap"). **Exhibit 3 at Schedule 3 (3)(a).**

52. The Sam's Deed contains limits Maintenance Assessments to $19,950.00 per annum, subject to adjustment on January 1 of each year based upon a change in the Consumer Price Index from the date of recording of the Sam's Deed (the "Sam's CAM Cap"). **Exhibit 4 at Schedule 3 (3)(a).**

53. Pursuant to § 4.4(a) of the Declaration and the deed restrictions at Schedule 3 (3)(a) of the Walmart Deed, Walmart is responsible for paying CAM expenses only as provided pursuant to the Walmart CAM Cap. Conversely, Walmart is not responsible for paying CAM expenses beyond the scope of the Walmart CAM Cap.

54. Pursuant to § 4.4(a) of the Declaration and the deed restrictions at Schedule 3 (3)(a) of the Sam's Deed, Sam's is responsible for paying CAM expenses only as provided pursuant to the Sam's CAM Cap. Conversely, Sam's is not responsible for paying CAM expenses beyond the scope of the Sam's CAM Cap.

55. On or around August 22, 2024, Defendants sent Walmart an invoice for Maintenance Assessments (the "Walmart CAM Invoice") for the 2023 calendar year in the amount of $70,878.44. *See* **Exhibit 10.**

56. On or around August 22, 2024, Defendants sent Sam's invoices for Maintenance Assessments (the "Sam's CAM Invoices") for the years 2019-2023 as follows:

   a. 2019: $79,123.76;

   b. 2020: $55,147.96;

      c. 2021: $93,045.99;

      d. 2022: $89,126.71; and

      e. 2023: $33,212.38.

*See* **Exhibit 11.**

57. The amounts billed in the Walmart CAM Invoice and Sam's CAM invoices, respectively, erroneously calculate Walmart's Maintenance Assessments and Sam's Maintenance Assessments, respectively, based upon a flat rate percentage, denoted as "tenant's share." *See* **Exhibits 10 and 11.**

58. The Walmart CAM Invoice and the Sam's CAM Invoices improperly fail to limit Walmart's Maintenance Assessments to the Walmart CAM Cap and the Sam's Maintenance Assessments to the Sam's CAM Cap. ***See* Exhibit 3 at Schedule 3 (3)(a); Exhibit 4 at Schedule 3 (3)(a); Exhibit 10; Exhibit 11**. In short, the Walmart CAM Invoice and the Sam's CAM Invoices are excessive and seek funds to which Defendants are not entitled. Upon information and belief, the Walmart CAM Invoice and the Sam's CAM Invoices do not reflect any expenses related to maintenance of the Roadways.

59. On or around May 14, 2025, Sam's received corrected, reconciled CAM invoices for the years 2018-2024, which, upon information and belief, are approximately in accordance with the Sam's CAM Cap (the "Reconciled Sam's CAM Invoices"). A true and correct copy of the Reconciled Sam's CAM Invoices are attached hereto as **Exhibit 12**.

60. Subsequent to April 30, 2025, Walmart received a CAM invoice for the calendar year 2025 which, upon information and belief, is approximately in accordance with the Walmart CAM Cap (the "April 30, 2025 CAM Invoice"). A true and correct copy of the April 30, 2025 CAM Invoice is attached hereto as **Exhibit 13**.

61. As of the date of filing of this Complaint, Sam's is processing payment of the Reconciled Sam's CAM Invoices.

62. As of the date of filing of this Complaint, Walmart is processing payment of the April 30, 2025 CAM Invoice.

## COUNT I
## BREACH OF CONTRACT

63. Plaintiffs incorporate by reference as if set forth in full the allegations contained in Paragraphs 1-62 above.

64. Section 4.2 of the Declaration requires Defendants, as successor to Declarant, to "maintain the Common Amenities in a good and safe state of repair and in a clean and orderly condition," which includes "maintaining, cleaning, insuring, repairing, paving and resurfacing, operating, removing trash, obstructions, debris and refuse from, and lighting" the common areas, including the Roadways, which includes Village Center Drive. *See* **Exhibit 2**.

65. Section 9.4(a) of the Declaration provides that Parcel Owners, such as Walmart and Sam's, which have an interest to be protected under the Declaration, "shall each have the right to prosecute any proceedings at law or in equity against any Person breaching or attempting to breach the provisions of this Declaration, and/or to recover damages for any such breach. The remedies available under this Subsection 9.4(a) shall include ex parte applications for temporary restraining orders, preliminary injunctions and permanent injunctions enjoining any such violation or attempted violation, and actions for specific performance of this Declaration." *See* **Exhibit 2**.

66. The Roadways serving Plaintiffs' parcels are in a state of significant disrepair and deterioration, including massive potholes that pose significant risk to vehicles. *See, e.g.,* **Exhibits 5 & 6**.

67.     Sam's delivered the September 4th Default Notice to Defendants under the Declaration, as required by Section 9.4 of the Declaration.

68.     Walmart delivered the March 13th Default Notice to Defendants under the Declaration, as required by Section 9.4 of the Declaration.

69.     Defendants have failed to perform their contractual obligations to maintain and repair the Roadways and are contractually obligated to return the Roadways to a state of good and safe repair, which involves repaving and resurfacing.

70.     To date, Plaintiffs have incurred direct damages as a result of Defendants' violations of the Declaration, including the fact that Plaintiffs have not received the benefit of their rights under the Declaration – maintenance of the Roadways – and suffered money damages in excess of $229,748.00, exclusive of interest and costs, along with other damages from vendors and suppliers refusing delivery to and, upon information and belief, from customers avoiding shopping at their stores located at Pittsburgh Mills due to the condition of the Roadways. Moreover, upon information and belief, the Roadways need approximately $5,000,000.00 of repairs.

WHEREFORE, with respect to Count I of Complaint, Plaintiffs Wal-Mart Real Estate Business Trust and Sam's Real Estate Business Trust request that the Court (i) find the Defendants in breach of the Declaration; (ii) order Defendants to return the Roadways, including but not limited to Village Center Drive, to a state of good and safe repair, which involves repaving and resurfacing; (iii) enter judgment in favor of Plaintiffs and against Defendants, awarding damages in excess of $229,748.00, plus interest, attorneys' fees, and costs; and (iv) award such further relief as the court deems just and reasonable.

## COUNT II
## DECLARATORY JUDGMENT
**28 U.S.C. § 2201,** *et seq*

71. Plaintiffs incorporate by reference as if set forth in full the allegations contained in Paragraphs 1-70 above.

72. Pursuant to the Declaration, Defendants are required to maintain the Common Amenities in a good and safe state of repair and in a clean and orderly condition," which includes "maintaining, cleaning, insuring, repairing, paving and resurfacing, operating, removing trash, obstructions, debris and refuse from, and lighting" the common areas, including the roadway known as Village Center Drive. *See* **Exhibit 2**.

73. Despite Plaintiffs providing multiple notices to Defendants of the Roadways' poor and failing condition, the Roadways remain in disrepair and are deteriorated, including massive potholes that pose significant risk to vehicles. *See, e.g.,* **Exhibits 5 & 6**.

74. The Defendants have therefore failed to maintain and repair the Roadways in accord with the requirements of the Declaration.

75. Consequently, there presently exists a substantial and actual controversy between Plaintiffs and Defendants, involving their respective rights, obligations, and responsibilities under the Declaration, which adversely aligns Plaintiffs and Defendants in a manner that will continue unless resolved by a determination of this Court.

76. Accordingly, Plaintiffs are entitled to a declaration that (i) Defendants are in violation of the Declaration; (ii) Defendants have an obligation to return the Roadways, including but not limited to Village Center Drive, to a good and safe state of repair; and (iii) directing Defendants to immediately repair the Roadways to a state of good and safe repair, which involves repaving and resurfacing.

77. This Court has jurisdiction to grant the requested declaratory relief pursuant to 28 U.S.C. § 2201, *et seq*.

WHEREFORE, with respect to Count II of the Complaint, Plaintiffs request that the Court find and declare that (i) Defendants are in violation of the Declaration; (ii) Defendants must immediately repair the Roadways, including but not limited to Village Center Drive, to a state of good and safe repair, which involves repaving and resurfacing; and (iii) Plaintiffs are awarded costs, attorneys fees, and such other relief as the Court finds just and proper.

## COUNT III
## SPECIFIC PERFORMANCE

78. Plaintiffs incorporate by reference as if set forth in full the allegations contained in Paragraphs 1-77 above.

79. Pursuant to the Declaration, Defendants are required to "maintain the Common Amenities in a good and safe state of repair and in a clean and orderly condition," which includes "maintaining, cleaning, insuring, repairing, paving and resurfacing, operating, removing trash, obstructions, debris and refuse from, and lighting" the common areas, including the roadway known as Village Center Drive. *See* **Exhibit 2**.

80. Despite Plaintiffs providing multiple notices to Defendants of the Roadways' poor and failing condition, the Roadways remain in disrepair and are deteriorated, including massive potholes that pose significant risk to vehicles. *See, e.g.,* **Exhibits 5 & 6**.

81. Because the unique nature of the Roadways as publicly dedicated but privately maintained, and Defendants' responsibility for their maintenance in a state of good and safe repair, which involves repaving and resurfacing, Plaintiffs have no other adequate remedy at law but an order of court directing specific performance of the Declaration.

82.     Consequently, Plaintiffs are entitled to an order of specific performance, directing the Defendants to immediately return the Roadways to a state of good and safe repair, which involves repaving and resurfacing.

WHEREFORE, with respect to Count III of the Complaint, Plaintiffs request that the Court find in their favor and against the Defendants, (i) entering an order of specific performance, directing the Defendants to immediately return the Roadways, including but not limited to Village Center Drive, to a state of good and safe repair, which involves repaving and resurfacing; and (ii) awarding Plaintiffs costs, attorneys fees, and such other relief as the Court finds just and proper.

## COUNT IV
## DECLARATORY JUDGMENT
**(Walmart v. All Defendants)**

83.     Plaintiffs incorporate by reference as if set forth in full the allegations contained in Paragraphs 1-82 above.

84.     Pursuant to Section 4.4 of the Declaration, each Parcel Owner is required to contribute to expenses for CAM through Maintenance Assessments. *See* **Exhibit 2 § 4.4.**

85.     However, pursuant to § 4.4(a) of the Declaration, the Maintenance Assessments outlined in § 4.4 of the Declaration are expressly limited: "to the extent otherwise provided in any recorded deed restriction to which Declarant and the applicable Parcel Owner are parties, which deed restriction shall supersede any provision hereof to the contrary." *Id*. at § 4.4(a).

86.     The Walmart Deed limits Maintenance Assessments to the Walmart CAM Cap. **Exhibit 3 at Schedule 3 (3)(a).**

87.     On or around August 22, 2024, Defendants sent Walmart the Walmart Invoice for Maintenance Assessments for the 2023 calendar year in the amount of $70,878.44. *See* **Exhibit 10.**

88. The Walmart CAM Invoice erroneously calculates Walmart's Maintenance Assessments by a flat rate percentage denoted as "tenant's share." *See* **Exhibit 10.**

89. The Walmart CAM Invoice improperly fails to limit Walmart's Maintenance Assessments to the Walmart CAM Cap. ***See*** **Exhibit 3 at Schedule 3 (3)(a); Exhibit 10.**

90. There presently exists substantial and actual controversy between Walmart and Defendants, involving the respective rights and obligations under the Declaration and pursuant to the Walmart Deed, which adversely aligns Plaintiffs and Defendants in a manner that will continue unless resolved by a determination of this Court.

91. Accordingly, Walmart is entitled to a declaration that (a) the Walmart CAM Cap contained in Schedule 3 (3)(a) of the Walmart Deed limits the Maintenance Assessments owed by Walmart to Defendants to the Walmart CAM Cap; (b) the Walmart CAM Invoice is improperly calculated, in contravention of the Walmart CAM Cap in Schedule 3(3)(a) of the Walmart Deed; (c) the Walmart CAM Invoice is null and void, such that Walmart has no obligation to pay the Walmart CAM invoice; and (d) Defendant shall issue new, corrected CAM invoices to Walmart that comply with the terms of the Walmart Deed for all years that are not time barred by Defendants' failure to timely issue such invoices, and have not been issued or are not correct.

92. This Court has jurisdiction to grant the requested declaratory relief pursuant to 28 U.S.C. § 2201, *et seq*.

WHEREFORE, with respect to Count IV of the Complaint, Walmart requests that the Court find and declare that (a) Schedule 3 (3)(a) of the Walmart Deed limits Maintenance Assessments owed by Walmart to Defendants to the Walmart CAM Cap; (b) the Walmart CAM Invoice is improperly calculated, in contravention of the Walmart CAM Cap in Schedule 3(3)(a)

of the Walmart Deed, (c) the Walmart CAM Invoice is null and void, such that Walmart has no obligation to pay the Walmart CAM invoice; and (d) Defendants shall issue new, corrected CAM invoices to Walmart that comply with the terms of the Walmart Deed for all years that are not time barred by Defendants' failure to timely issue such invoices, where such invoices have not been issued or are not correct. Walmart further requests that the Court enter an order awarding Walmart costs, attorneys fees, and such other relief as the Court finds just and proper and, for the avoidance of doubt, enjoining Defendants from filing a lien against any Walmart property based upon the Walmart CAM Invoice.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

Date: June 4, 2025    By:    *s/John R. Gotaskie*
John R. Gotaskie, Jr.
PA ID No. 81143
Alison Gutierrez
PA ID No. 330738
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
Telephone: 412-394-5528
Facsimile: 412-391-6984
JGotaskie@foxrothschild.com
AGutierrez@foxrothchild.com

*Counsel for Plaintiffs, Wal-Mart Real Estate Business Trust and Sam's Real Estate Business Trust*